UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
IP CO. LLC,

                       Plaintiff,

          - against -

GENERAL COMMUNICATION, INC. and
GCI COMMUNICATION CORPORATION,

                      Defendant.
-------------------------------------------------------x

07 Civ. 2372 (CLB)

*Memorandum and Order*

Brieant, J.

Before the Court in this action for declaratory judgment, is a motion for an order of dismissal, pursuant to Fed. R. Civ. Pro. § 12(b)(2), for lack of personal jurisdiction. The motion was filed on September 5, 2007 (Doc. No. 12). Opposition papers were filed on September 19, 2007 (Doc. No. 21). Reply papers were filed on September 28, 2007 (Doc. No. 22). Oral argument by both parties was heard on October 5, 2007.

The following facts are presumed true for the purposes of this motion only. James Gee, Jr., a resident of Tennessee, is the principal of IP Co. LLC (the "Plaintiff"), having its principal office in Ossining, New York in this district. Plaintiff is a shell entity that owns and manages a portfolio of intellectual properties owned by Mr. Gee. Plaintiff owns two federally registered trademarks which are used in connection with Mr. Gee's company, Global Cable Inc. ("Global Cable"). The trademarks are "GCI" and "GCI GLOBAL CABLE INC.". It is alleged that Global Cable has continually employed these two marks since 1995. Global Cable is a Georgia corporation that manufactures and repairs cable equipment and converters for consumers. Global

Cable also refurbishes and repairs cable boxes on a large scale for cable television providers.

General Communications, Inc, is a publicly traded company based in Anchorage, Alaska. GCI Communications Corp. ("GCI") is a wholly owned subsidiary of General Communications, Inc. (collectively the "Defendants") that was founded in 1979. Both companies are incorporated in Alaska. GCI provides local wireless and long distance telephone, cable television, Internet and data communications services throughout Alaska. GCI owns four U.S. trademark registrations for its "GCI" mark, (U.S. Registration Nos.: 2281319; 2287633; 2287632; and 1304141), the earliest of which was issued in 1984 for "voice and data telecommunications services". The others cover a wide spectrum of telecommunication services. GCI claims to have invested over $750 million in its integrated communications assets and its annual advertising budget exceeds $1 million. Defendants assert that the GCI mark is highly recognized and the reputation and goodwill associated with its mark are valuable assets.

In 2006, GCI learned that Global Cable had applied for its two trademarks, which were issued by the United States Patent and Trademark Office ("USPTO"). The marks were registered on January 17, 2006 and March 14, 2006, respectively. On February 1, 2007, Defendants sent a cease and desist letter to Plaintiff's lawyer, located at Plaintiff's New York address. The letter asked Plaintiff to stop using the "GCI" trademark, surrender the two trademarks and abandon the domain name "gcil.com". After receiving the letter, Plaintiff's counsel telephoned GCI's counsel. After multiple phone and e-mail conversations attempting to resolve the issue, Plaintiff filed this action for a declaratory judgment, holding that it does not

infringe on Defendants' trademarks. The parties continued to exchange information for approximately three months, when Plaintiff then served the Summons and Complaint on Defendants in Anchorage.

Defendants contend that GCI has never been licensed to do business in New York nor has it ever conducted business here. GCI does not have an office or employ any employees in New York, own or rent any property in the state, or advertise or solicit business here. Overall, Defendants claim that they have no contacts with the State of New York sufficient to support personal jurisdiction.

Plaintiffs, however, allege various contacts between the Defendants and New York. First, the Plaintiffs claim that in 2001-2002, Global Cable contracted with Adelphia Communications Corporation to purchase thousands of cable boxes, which Global Cable then arranged to refurbish and resell to GCI. (See Plain. Memo Ex. D). Adelphia later breached its contract with Global Cable, at which time GCI recommended that Global Cable contact Contec, a cable brokerage firm in Schenectady, New York, that GCI "regularly purchase[d] cable equipment from". Global Cable did so and completed the transaction with GCI. During this transaction, it is contended that GCI did not object to Plaintiff's marks.

Plaintiff contends that the operations of a cable television provider require GCI to engage in contacts with numerous cable networks located in New York, such as paying subscription fees and special authorization from the networks to decode encrypted signals. Plaintiff maintains that

television channel signals are changed on a regular basis. Defendants, however, claim that most of the network representatives that GCI deals with are based on the West Coast and that GCI "rarely interacts directly with network providers in New York".

Further, Plaintiff asserts that, although GCI does not provide service in New York, Defendant receives subscription fees from customers in New York through its website, which allows for the maintenance of accounts from anywhere around the world. Additionally, Plaintiff asserts that GCI was involved in the WorldCom, Inc. bankruptcy proceedings in the Southern District of New York in 2002, as a major creditor of WorldCom, and thus, the Defendants availed themselves of the benefits of this forum.

In addition to GCI's stock being traded on NASDAQ, Defendants officers travel to New York two or three times per quarter for meetings related to raising capital and other financial matters. Additionally, in 2003, Defendants obtained $50 million in financing from Credit Lyonnais in New York for assistance in building a fiber optic cable.

Plaintiff also maintains, and Defendants admit, that GCI purchases refurbished cable equipment from Contec, a company located in Schenectady, New York, since 2000. However, Defendants claim that the total value of such purchases from Contec during 2001 through 2007 amounts to approximately $13.5 million, only 0.37% of GCI's total purchases during that period.

In addition, in June 2007, Defendants awarded a $20.7 million contract to Globecomm

System located in Hauppauge, New York to provide new software systems and platforms to assist in supporting and extending GCI's communication network throughout rural villages in Alaska.

*Rule § 12(b)(2) Motion to dismiss for lack of personal jurisdiction*

In a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. "A plaintiff may carry this burden 'by pleading in good faith...legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). "Where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

*NY CPLR § 301: "Doing Business"*

Under New York law, a foreign corporation is subject to general personal jurisdiction in New York if it is "doing business" in the state. *See* N.Y. C.P.L.R. § 301; *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000). "A corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Id.*(quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267 (1917). A plaintiff must show that a

defendant engaged in "continuous and systematic" activity in New York. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) (quoting *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 536 (Ct. App. 1967). "Occasional or casual business in New York does not suffice under section 301." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990). Factors considered for purposes of finding § 301 jurisdiction include: "the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." *Hoffritz*, 763 F.2d at 58.

GCI exhibits none of the "traditional" signs of an entity doing business in New York. GCI maintains no office in New York, owns no real estate and has no personnel who regularly work in the state.

GCI is listed on NASDAQ. It is clear, however, that having securities listed on New York-based stock exchanges and preforming activities necessary to facilitate those listings, without more, are insufficient to confer New York jurisdiction over a foreign corporation. *See Wiwa v. Royal Dutch Petroleum Co.*, 266 F.3d 88, 97 (2d Cir. 2000). Additionally, although Defendants admit that they come to New York "two or three times per quarter" for various corporate matters including "capital raising activities", they deny that they solicit any business in New York during these visits. *Cf. Wiwa*, 226 F.3d at 98. (jurisdiction found because activities conducted in New York were broader than those "merely incidental to the stock exchange listing" and constituted "solicitation"). "Raising financing is not a form of 'doing business' for

the purpose of §301; if it were, then almost every company in the country would be subject to New York's jurisdiction." *Clark v. Fonix Corp.*, No. 98 Civ. 6116, 1999 WL 105031, at *5 (S.D.N.Y. Mar. 1, 1999) *aff'd* 199 F.3d 1321 (2d Cir. 1999).

Defendants admit that they have been purchasing cable supplies from a New York based company since 2000, although they claim that these purchases represent less than one percent of GCI's total purchases from that time. Such purchasing, even if occurring at regular intervals, is not enough without more to establish "doing business," and does not warrant the inference that the corporation was present with the jurisdiction of New York. *See Rosenberg Bros. & Co., Inc. v. Curtis Brown Co.*, 260 U.S. 516, 518, 43 S.Ct. 170, 171 (1923); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) (held that *International Shoe* did not repudiate its holding in *Rosenberg* and "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."). Additionally sending one "cease and desist" letter into New York threatening litigation against Plaintiff is not sufficient, nor does it support a finding of Plaintiff's fictional presence in New York. *See Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 763 (2d Cir. 1983).

Defendants maintain a website that is accessible all over the world. However, although New York residents can access this website, the Defendants only supply cable television and communications to Alaska. Thus, although an Alaskan resident that has an account with GCI may pay its bill from a computer in New York, this does not amount to "doing business" within

the New York.

Accordingly, there has been no *prima facie* showing that Defendants were "doing business" in New York and thus, personal jurisdiction under N.Y.C.P.L.R. § 301 is not available in this case.

*NY CPLR § 302(a)(1) "Transacts Business" and " Arises out of"*

Two requirements must be met to establish personal jurisdiction under § 302(a)(1): (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity. *See* N.Y. C.P.L.R. § 302(a)(1); *see also Sole Resort, S.A. de C. V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006); *Hoffritz*, 763 F.2d 55 ("The showing necessary for a finding that defendant 'transacted business' and is suable on a cause of action arising from that transaction is considerably less than that needed to establish defendant's 'doing business,' which renders the defendant subject to suit on even an unrelated cause of action.").

A non-domiciliary transacts business in New York by purposefully availing itself of the privilege of conducting activities within the State, thus invoking the benefits and protections of its laws. *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 548 (2d Cir. 2007) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1938). When defendants purposefully avail themselves of the benefits and protections of the forum's laws, it is not unreasonable to require them to submit to the burdens of litigation in that forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

"No single event or contact connecting defendant to the forum state need be demonstrated; rather the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." *Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *see also Agency Rent A Car System v. Grand Rent A Car Corp.*, 98 F.3d 25 (2d Cir. 1996); *Hoffritz*, 763 F.2d at 60 (for § 302 analysis, Court must view the totality of the circumstances surrounding the defendant's activities in New York in connection with the matter giving rise to the lawsuit). However, "[a]lthough it is the aggregate which will decide the issue of jurisdiction, some activities are more important than others, and, therefore, separate evaluation aids analysis." *Galgay v. Bulletin Co., Inc.*, 504 F.2d 1062, 1064 (2d Cir. 1974).

Defendants' contacts with New York that are of significance are: (1) continuous purchases of cable supplies from a New York supplier since 2000; (2) visits to New York for the purposes of "capital raising"; and (3) loans given by investors who are headquartered in New York. While none of these activities alone would suffice to establish personal jurisdiction over Defendants, considering the totality of these activities may yield a different outcome. Even assuming that it can be found that Defendants "transacted business" in New York, § 302(a)(1) necessarily requires the additional showing of a "direct relation between the cause of action and the instate conduct." *See Fontanetta v. Am. Board of Internal Medicine*, 421 F.2d 355, 375 (2d Cir. 1970).

"A claim 'arises out of' a defendant's transaction of business in New York when there exists a substantial nexus between the business transacted and the cause of action sued upon."

*Agency Rent A Car System,* 98 F.3d at 31 (quoting *Hoffritz*, 763 F.2d at 60 (internal quotations omitted). "A connection [between the transaction and the claim asserted] that is 'merely coincidental' is insufficient to support jurisdiction. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). "While there has been much discussion of what amounts to transacting business under section 302(a)(1), there had been little analysis of when a cause of action 'arises' out of business so transacted." *Id.* (quoting *Fontanetta v. Am. Bd. of Internal Medicine*, 421 F.2d 355, 357 (2d Cir. 1970).

The present controversy arose not from Defendant's New York activity, but as a result of GCI's "cease and desist" letter. *See Beacon v. Enterprise, Inc. v. Menzies*, 715 F.2d 757, 765 (2d Cir. 1983). Defendants' letter sent to Plaintiff in New York alleging infringement in an unspecified locale and threatening litigation in an unspecified forum did not constitute a 'transaction of business' in New York, nor did it serve to invoke the "benefits and protections" of New York law. *Id.* at 766. The critical question for finding personal jurisdiction is whether the claim arises out of the activities of the Defendants in New York . *See Agency Rent A Car Systems*, 98 F.3d at 32. In this case, it does not. Plaintiff's claim seeks a declaration that it has done nothing to impair or injure the Defendants' rights in their existing trademarks. None of Defendants' alleged New York activities give rise to this claim. *See Beacon*, 715 F.2d at 766.

No sufficient nexus exists between Defendants' contacts with New York, and Plaintiff's declaratory judgment action. Plaintiff has failed to make *prima facie* showing of personal jurisdiction in this case.

The motion is granted, and the action is dismissed. Plaintiff, if so advised, may within ten (10) days request the Court to vacate this order and transfer the case to the United States District Court for Alaska, pursuant to 28 U.S.C. § 1406.

X

    X

        X

          X

            X

              X

                X

SO ORDERED.

SO ORDERED.

Dated: White Plains, New York
October 31, 2007

　　　　　　　　　　　　　　　　　　*Charles L. Brieant*
　　　　　　　　　　　　　　　　　　Charles L. Brieant, U.S.D.J.